UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **Service Employees International Union National Industry Pension Fund**, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 14-cv-00334 (APM) |
| **Castle Hill Health Care Providers, LLC**, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

A party cannot avoid summary judgment under Federal Rule of Civil Procedure 56(d) simply by claiming that it needs more time to discover facts to support its opposition. Rule 56(d) requires a party seeking relief under the rule to have shown diligence in pursuing discovery. The party also must articulate what facts it hopes to discover and why those facts are needed. Defendants here have failed to demonstrate entitlement to relief under Rule 56(d). They have not been diligent in their pursuit of discovery. Nor have they identified what facts they hope to learn through discovery or stated why such facts are necessary to oppose Plaintiffs' Motion for Summary

Judgment. Because Defendants have failed to demonstrate that they are entitled to additional time to conduct discovery under Rule 56(d), the court will enter summary judgment in Plaintiffs' favor.

## II. BACKGROUND

### A. Factual Background

#### 1. *Contractual History*

Plaintiff Service Employees International Union National Industry Pension Fund (the "Pension Fund") is a multiemployer pension plan within the meaning of the Employee Retirement Income Security Act ("ERISA"). Pls.' Mot. for Summ. J., ECF No. 19 [hereinafter "Pls.' Mot."], Ex., Pls.' Statement of Material Facts Not in Dispute, ECF No. 19-2 [hereinafter "Pls.' Statement"], ¶¶ 1-2. The Pension Fund provides pension benefits to eligible employees of contributing employers. *Id.*

Defendants Castle Hill Healthcare Providers d/b/a Castle Hill Health Care Center and Alaris Health, LLC, d/b/a Castle Hill Health Care Center (collectively, "Castle Hill"), operate a long-term healthcare facility located in Union City, New Jersey. Defs.' Opp'n, ECF No. 23, at 1-2. In 1992, Castle Hill entered into a collective bargaining agreement (the "1992 CBA") with Service Employees International Union, Local 1199NJ (the "Union"), the collective bargaining agent for some of Castle Hill's employees. Compl., ECF No. 1, at 4. Ten years later, Castle Hill and the Union modified the 1992 CBA in a new agreement (the "2002 Agreement"). Compl. at 4; *see also* Compl., Ex. 2, ECF No. 1-2. To comply with Section 6 of the new 2002 Agreement—which required Castle Hill to provide pension benefits to employees through the "SEIU Pension Plan"—Castle Hill entered into a participation agreement with Plaintiff (the "Participation Agreement") in November 2002. Compl. at 4-5; *see also* Compl., Ex. 3, ECF No. 1-3. The Participation Agreement stated that the "Employer," *i.e.*, Castle Hill, "agrees to be bound by the

provisions of the Agreement and Declaration of Trust establishing the Fund . . . and by all resolutions and rules adopted by the Trustees . . . including collection policies, receipt of which is hereby acknowledged." Compl. at 4 (quoting Compl., Ex. 3 at 2).

Together, the 2002 Agreement and the Participation Agreement required Castle Hill to contribute 1.5 percent of each covered employee's gross monthly wages to the Pension Fund starting in 2002. Compl. at 5. That amount increased in 2004 and 2005 to 1.7 percent and 2.0 percent, respectively. *Id.* In addition, the Collection Policy, referenced in the Participation Agreement, provided that an employer that fell short of its contributions to the Pension Fund would be liable for interest at a rate of 10 percent per annum, liquidated damages at a rate of 20 percent after the commencement of legal action, and attorney's fees and costs. Compl., Ex. 5, ECF No. 1-5, at 9-10.

In 2010, Castle Hill and the Union entered into a Memorandum of Agreement (the "2010 MOU") extending the collective bargaining agreement and providing that the pension contribution rate would increase to 2.2 percent. Compl. at 5; Compl., Ex. 6, ECF No. 1-6, at 3. The 2010 MOU also provided that the pension contribution rate would increase to 2.37 percent after one year, and to 2.55 percent after two years. *Id.*

2. *The Rehabilitation Plan*

As a result of investment losses in 2008, the Pension Fund was deemed to be in "critical status" each year between 2009 through 2014.[1] Pls.' Mot., Ex., Decl. of Kenneth J. Anderson, ECF No. 19-4 [hereinafter "Anderson Decl."], ¶ 14; Compl., Ex. 9, ECF No. 1-9. In accordance with the Pension Protection Act of 2006, Pub. L. 109-280 (2006) ("PPA"), the Pension Fund established a Rehabilitation Plan, which required participating employers to pay surcharges ("PPA

---

[1] Under federal pension law, a plan generally will be considered to be in "critical status" if, by certain statutorily defined measures, the plan's funding is too low. *See generally* 26 U.S.C. § 432.

surcharges") and supplemental contributions to it under either one of two schedules—either a "Default" or "Preferred" Schedule. Anderson Decl. ¶¶ 15-16. The Pension Fund sent letters to participating employers notifying them of its critical status and the Rehabilitation Plan with its two scheduling options. *Id.* ¶¶ 14-16 (citing Compl., Ex. 8, ECF No. 1-8, and Compl., Ex. 9, ECF No. 1-9).

Castle Hill opted to make its supplemental contributions according to the Preferred Schedule. Compl. at 8. Under this schedule, Defendants owed, on April 1, 2010, a supplemental contribution of 10.0 percent of all contributions due; on April 1, 2011, a supplemental contribution of 18.5 percent of all contributions due; on April 1, 2012, a supplemental contribution of 27.7 percent of all contributions due; and on April 1, 2013, a supplemental contribution of 37.6 percent of all contributions due. *Id.*

3.  *Outstanding Payments*

According to Plaintiffs, for various months in the years 2010 through 2014, Defendants failed to pay the required contributions, interest charges, and liquidated damages as to three of its healthcare facilities. Pl.'s Statement ¶ 29. Based on Plaintiffs' calculations, for Site 2815, otherwise known as "C.N.A.'s," Castle Hill owes $10,109.69 in contributions for certain months between April 2011 through September 2014; for Site 2354, otherwise known as "Dietary/Hskpg," Castle Hill owes $4,370.75 in contributions for certain months between November 2011 through September 2014; and for Site 2825, otherwise known as "Sunshine Recreation," Castle Hill owes $43.28 in contributions for certain months between May 2012 through July 2014. *Id.* ¶¶ 30-32.

Defendants also owe interest and liquidated damages of 20 percent on these unpaid contributions. *Id.* ¶¶ 33-36.

### 4. *Late Payments*

In addition, Defendants owe interest and liquidated damages as a result of late paying their contributions for Site 2815 (C.N.A.'s) and Site 2354 (Dietary/Hskpg) for various months between April 2010 and September 2014. *Id.* ¶ 37. For Site 2815 (C.N.A.'s), Plaintiffs calculate that Castle Hill owes $931.41 in interest and $8,342.09 in liquidated damages. *Id.* ¶ 38. For Site 2354 (Dietary/Hskpg), Castle Hill owes $348.80 in interest and $2,385.85 in liquidated damages. *Id.* ¶ 39.

### 5. *The Audit*

Plaintiffs conducted a payroll audit of Defendants for the calendar years 2010 and 2011. Compl. at 6 (citing Compl., Ex. 4). The audit revealed that Defendants owed the Pension Fund $4,479, including interest, because of a discrepancy between the amount that Castle Hill reported it paid in employee salaries and the amount it actually paid. Pls.' Mot., Ex., Pls.' Mem. in Supp. of Summ. J., ECF No. 19-1 [hereinafter "Pls.' Mem."], at 7 (citing Anderson Decl. ¶ 21). The amount the audit identified is separate and distinct from Castle Hill's outstanding balances resulting from its failure to pay or its late payment of the required contributions, as described above. Pls.' Reply in Supp. of Mot. for Summ. J., ECF No. 24 [hereinafter "Pls.' Reply"], Ex., Decl. of Andre Joseph, ECF No. 24-1 [hereinafter "Joseph Decl."], ¶ 14. Defendants were notified by letters sent on September 19, 2012, November 8, 2012, February 6, 2014, and October 16, 2014, of the audit's results as well as their obligation to pay the missing amounts. *Id.* ¶ 13 (citing Compl., Ex. 4; Pls.' Mot., Ex. 11, ECF No. 19-7). Interest continues to accrue on this amount. Pls.' Mem.

at 7. To date, Defendants "have failed or refused [to] remit the amounts owed" under the audit. Joseph Decl. ¶ 13.

### 6. *The Missing Remittance Reports*

Section 3.1 of the SEIU Pension Fund's Trust Agreement and Section 2 of the Collections Policy provide that an employer must submit contributions and supporting remittance reports to the SEIU Pension Fund by the fifteenth day of the month after the month in which the work was performed. Compl., Ex. 4 at 3; Compl., Ex. 5 at 3.

Defendants failed to provide remittance reports for certain months at each of the three sites. For Site 2354 (Dietary/Hskpg), Castle Hill failed to submit remittance reports for the months of August 2012 and August 2013. Joseph Decl. ¶ 15. For Site 2815 (C.N.A.'s), Castle Hill failed to submit a remittance report for the month of August 2013. *Id.* For Site 2825 (Sunshine Recreation), Castle Hill failed to submit remittance reports for the months of March 2010 through April 2012, June 2012 through August 2013, October 2013 through March 2014, and May 2014 through July 2014. *Id.*

### B. Procedural History

On February 28, 2014, the Pension Fund and its Trustees (collectively, "Plaintiffs") filed a complaint alleging that Defendants, for certain months in the years 2010 through 2014, had failed to make contribution payments and provide remittance reports, as required by their agreements. Compl. at 7. The Complaint asserted two counts, both arising under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145. *Id.* at 9-10. Plaintiffs requested various forms of relief, including: (1) a declaration that Defendants were delinquent in remitting owed contributions to the Pension Fund; (2) a judgment requiring Defendants to pay, for the periods specified, the delinquent contributions, interest, liquidated damages, PPA surcharges, and attorneys' fees and

costs; and (3) a permanent injunction requiring Defendants to timely file remittance reports and pay all owed contributions as they become due. *Id*. at 11-12.

Defendants answered the Complaint on October 7, 2014.[2] On that same day, Judge Lamberth, who was then assigned to this matter, issued an Order requiring the parties to hold a Local Civil Rule 16.3 conference within 15 days and to file a report containing a proposed discovery schedule within 10 days. Order, ECF No. 15. The parties never filed a Local Civil Rule 16.3 report with the court and there is no indication on this record that the parties met and conferred. Additionally, neither party moved for entry of a scheduling order. Plaintiffs filed their Motion for Summary Judgment on January 29, 2015—before Defendants had taken any discovery—nearly three months after Judge Lamberth had ordered the parties to hold a Local Civil Rule 16.3 conference.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure Rule 56 provides that a court should grant summary judgment if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(a)). A material fact is one that is capable of affecting the outcome of litigation. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

According to the Supreme Court, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, [ ] on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

---

[2] The over seven-month delay between the filing of the Complaint and the Answer was due to Defendants' failure to answer within the time proscribed under Federal Rule of Civil Procedure 12 and subsequent litigation over the Clerk of the Court's entry of a default and Plaintiffs' Motion for Default Judgment. *See* ECF Nos. 7, 11-13. On October 7, 2014, the court issued an Order denying Plaintiffs' Motion for Default Judgment, vacating the Clerk's entry of default, and considering Defendants' Answer filed on that date. ECF No. 15.

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and identifying those portions of the record that it believes "demonstrate the absence of a genuine issue of material fact." *Id.* at 323.

Once the moving party has made an adequate showing that a fact cannot be disputed, the burden shifts to the party opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation and internal quotation marks omitted) (footnote omitted). The nonmoving party may oppose the motion using "any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which [the Court has] referred." *Celotex Corp.*, 477 U.S. at 324. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citations omitted). However, "to defeat a motion for summary judgment, the non-moving party must offer more than mere unsupported allegations or denials." *Dormu v. District of Columbia*, 795 F.Supp.2d 7, 17 (D.D.C. 2011) (citing *Celotex*, 477 U.S. at 324).

IV.   ANALYSIS

    A.   **Plaintiffs' Evidence in Support of Summary Judgment**

Plaintiffs have offered the following evidence to support their motion for summary judgment: (a) the parties' various agreements; (b) letters and accompanying spreadsheets sent by the Pension Fund to Castle Hill describing the audit; (c) letters sent by the Pension Fund to Castle Hill notifying Defendants of their obligations under the Rehabilitation Plan; (d) a Declaration by Kenneth J. Anderson, the Pension Fund's Contribution Compliance Manager ("Anderson Declaration"); (e) a Declaration by Richard C. Welch, counsel to Plaintiffs, setting forth the attorney's fees incurred and accompanying timesheets; and (f) a Declaration by Andre Joseph, the

Pension Fund's Payroll Review Manager, providing further explanation regarding the delinquent amounts ("Joseph Declaration").[3]

The court has reviewed the foregoing evidence and finds that it establishes Defendants' liability for failing to make certain contributions payments and to provide certain remittance reports, as well as a preliminary damages total. The Anderson Declaration summarizes the parties' contractual obligations under the various agreements. Anderson Decl. ¶¶ 6-9. Defendants have not disputed Anderson's summary of the relevant contractual provisions, and the court has reviewed and confirmed Castle Hill's general obligations under these agreements. To establish Defendants' breaches of the agreements, the Anderson Declaration sets forth the dates and amounts of Castle Hill's delinquencies, Anderson Decl. ¶¶ 17-19, and attaches as Exhibit 10 to their Motion for Summary Judgment a spreadsheet showing, for each of the three sites, the "Total Due Per Month," the "Amount Paid," and "Contributions Due." Pls.' Mot., Ex. 10, ECF No. 19-6. The spreadsheet also shows, for each site, a monthly breakdown of the interest and liquidated damages on late paid contributions. *Id.* As for the unpaid audit amounts, the Anderson and Joseph Declarations and their accompanying exhibits explain the payment deficiencies as determined by the audit. Anderson Decl. ¶ 20; Joseph Decl., ECF No. 24-1, ¶ 10-13. And, finally, the Anderson and Joseph Declarations set forth the months for which Plaintiffs have not received remittance reports for each of the three sites. Anderson Decl. ¶ 22; Joseph Decl. ¶15.

Based on the foregoing, Plaintiffs calculate that Castle Hill owes the following amounts for unpaid and late contributions, interest, and liquidated damages for the three sites:

| | |
|---|---|
| Unpaid Contributions | $14,523.72 |
| Interest on Unpaid Contributions | $5,651.80 |
| Liquidated Damages on Unpaid Contributions | $2,904.74 |
| Interest on Late Paid Contributions | $1,280.21 |

---

[3] Although Plaintiffs offered the Joseph Declaration for the first time with their reply brief, Defendants have not raised an objection to its timeliness or its content. Therefore, the court will consider the contents of the Joseph Declaration.

| | |
|---|---:|
| Liquidated Damages on Late Paid Contributions | $10,727.94 |
| Amounts from Audit (including interest through October 17, 2014) | $4,479.70 |
| Daily Interest through January 20, 2015 | $91.18 |
| **Total** | **$39,659.29** |

Pls.' Mot. at 7.

Based on the foregoing evidence, which is recited in greater detail in the factual summary at the start of this opinion, the court finds that Plaintiffs have met their burden of "informing the district court of the basis for its motion, and identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted) (quoting Fed. R. Civ. Pro. 56(c)).

**B.     Defendants' Arguments Opposing Summary Judgment**

*1.     Rule 56(d) Argument*

Defendants have not attempted to challenge any of the foregoing factual assertions by identifying "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation and internal quotation marks omitted) (footnote omitted). Indeed, Defendants have produced no evidence whatsoever to support their opposition on the merits. *See generally* Defs.' Opp'n. Instead, they claim to lack sufficient information to respond to Plaintiffs' factual contentions. *Id.* at 3-5. For instance, in their Response to Plaintiffs' Statement of Undisputed Material Facts, Defendants repeatedly state that "Castle Hill is without sufficient information to admit or deny" Plaintiffs' factual assertions. *See, e.g.*, Defs.' Resp. to Pls.' Statement of Undisputed Material Facts, ECF No. 23-1 [hereinafter "Defs.' Statement"], ¶ 29 ("Paragraph 29 purports to set forth certain failures by Castle Hill; however, without discovery, Castle Hill is without sufficient information to admit or deny."). Of course, professing ignorance cannot create a genuine dispute of material fact under Rule 56(c). *See* 10B Charles Alan Wright & Arthur R.

Miller, *Federal Practice and Procedure* § 2741 (3d ed.) ("[A] claim of ignorance of the truth of the allegations in the moving party's Rule 56(e) affidavits is insufficient to create a genuine issue of material fact under [Rule 56(c)].").

So, instead Defendants ask the court to deny summary judgment, or defer ruling on the motion, under Rule 56(d) on the ground that they have not had an adequate opportunity to conduct discovery. Defs.' Opp'n at 3. Under Rule 56(d), a court may defer consideration of or deny a motion for summary judgment, or permit additional time for discovery when the nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Here, Defendants argue that "[w]ithout more information, which is solely in Plaintiffs' possession, Defendants are at an utter loss to determine necessary specifics as to Plaintiffs' allegations." Defs.' Opp'n at 5 (citations omitted).

Generally speaking, pre-discovery summary judgment motions are premature unless all parties have had a full and fair opportunity for discovery. *Convertino v. DOJ*, 684 F.3d 93, 99 (D.C. Cir. 2012) (citing *Anderson*, 477 U.S. at 257). For that reason, the Court of Appeals has directed trial courts to grant Rule 56(d) motions "'almost as a matter of course.'" *Id.* (quoting *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995)). But merely invoking Rule 56(d) is not enough to defeat summary judgment. At a minimum, to benefit from Rule 56(d), a party must show that it has diligently pursued discovery. *See Convertino*, 684 F.3d at 99 (stating that a Rule 56 motion requesting additional time for discovery should be granted "almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence") (citation and internal quotation marks omitted)). "In other words, Rule 56(f) [4] is designed to minister to

---

[4] *Resolution Trust Corp.* and other decisions discuss then-Rule 56(f), which is now Rule 56(d). Rule 56(d) "carrie[d] forward without substantial change the provisions of former subdivision (f)." Fed. R. Civ. P. 56 Advisory Committee's Notes to 2010 Amendments.

11

the vigilant, not to those who slumber upon perceptible rights." *Resolution Trust Corp. v. North Bridge Associates, Inc.*, 22 F.3d 1198, 1203 (1st Cir. 1994) (citation omitted) (cited approvingly in *Convertino*, 684 F.3d at 99).

Furthermore, the affidavit required by Rule 56(d) must state "with sufficient particularity . . . why discovery [is] necessary." *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008). In *Convertino*, the Court of Appeals explained that the affidavit must satisfy three requirements:

> First, it must outline the particular facts [the movant] intends to discover and describe why those facts are necessary to the litigation. Second, it must explain why [the movant] could not produce [the facts] in opposition to the motion [for summary judgment]. Third, it must show the information is in fact discoverable.

684 F.3d at 99-100 (citations and internal quotation marks omitted).

Following *Convertino*, in *U.S. ex. rel. Folliard v. Government Acquisitions, Inc.*, 764 F.3d 19 (D.C. Cir. 2014), the Court of Appeals clarified that its statement in *Convertino* that trial courts should grant Rule 56(d) motions "almost as a matter of course" was not intended to mean that "the non-movant's diligence in pursuing discovery trumps the three requirements of *Convertino*." *Id.* at 26. The court may consider the non-movant's diligence as a factor, but diligence alone is not enough to satisfy Rule 56(d). *See id.* The Court of Appeals also made clear in *Folliard* that district courts "should resolve each request based on its application of the *Convertino* criteria to the specific facts and circumstances presented in the request." *Id.* at 26-27. *Folliard* thus directs trial courts to scrutinize Rule 56(d) motions and not to reflexively grant them.

Here, the court rejects Defendants' Rule 56(d) request because their affidavit—submitted by their counsel David F. Jasinski, *see* Defs.' Opp'n., Ex., Decl. of David F. Jasinski, ECF No. 23-4 [hereinafter "Jasinski Decl."]—fails to satisfy all three *Convertino* criteria. Starting with the second and most significant criteria in this case, the Jasinski Declaration makes no effort to explain why Defendants could not produce facts to oppose summary judgment. There is probably good

12

reason for the Declaration's silence: Defendants made no effort to take discovery in this case, so they had nothing to report. *See Folliard*, 764 F.3d at 26, n.5 ("A district court may find the non-movant's diligence relevant to the requirement that the non-movant 'explain why he could not produce the facts in opposition to the motion for summary judgment.'" (quoting *Convertino*, 684 F.3d at 99-100)). Defendants' failure to take discovery was not for want of opportunity. More than three months before Plaintiffs filed their Motion, Judge Lamberth issued an order directing the parties to meet and confer under Local Rule 16.3 in order to initiate the discovery process. Order; *see also* Fed. R. Civ. P. 26(d) (barring discovery until the parties have conferred under Rule 26(f)). Evidently, the parties never met and conferred as directed, because the docket reflects no filing of a Local Civil Rule 16.3 statement. Nor does it reflect the filing of a motion, by either party, requesting that the court issue a scheduling order. If Defendants truly needed discovery, they could have asked the court to issue a scheduling order at any time during the three months preceding Plaintiffs' filing of their Motion. Because a party cannot invoke Rule 56(d) "to relieve counsel's lack of diligence," *Berkeley*, 68 F.3d at 1414, Defendants have failed to satisfy the second *Convertino* factor.

Defendants also have not satisfied the first and third *Convertino* factors. As to the first factor, Defendants have not outlined the facts they intend to discover or described why such facts are necessary to the litigation. *See Convertino*, 684 F.3d at 99. Defendants complain that Plaintiffs have failed to specify the months for which Defendants were delinquent in making contributions and claim that they need discovery to "elucidate the issue or support [Plaintiffs'] assertions." Defs.' Opp'n at 4 (citations omitted); *see also* Jasinski Decl. ¶¶ 4-6. But Defendants' professed uncertainty and confusion rings hollow in light of Plaintiffs' summary spreadsheet, which shows precisely for which months in which years Defendants were delinquent in making contribution

payments to each facility. *See* Pls.' Mot., Ex. 10. Defendants assert that the "spreadsheet is meaningless without more information regarding how the alleged deficiencies were determined," Defs.' Opp'n at 5 (citations omitted); Jasinski Decl. ¶ 9, but nowhere do they explain *why* the spreadsheet is "meaningless" or *what facts* they hope to obtain in discovery that would enable them to dispute Plaintiffs' calculations. A conclusory demand for discovery, such as that made by Defendants here, does not satisfy the first criteria of *Convertino*. *See also Strang v. U.S. Arms Control and Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989) (holding that the plaintiff's statements that "discovery 'would be invaluable in this case' and would give her 'an opportunity to test and elaborate the affidavit testimony already entered'" were too "vague" to require the district court to deny summary judgment); *Messina v. Krakower*, 439 F.3d 755, 762 (D.C. Cir. 2006) ("We will not find an abuse of discretion where the requesting party has offered only a conclusory assertion without any supporting facts to justify the proposition that the discovery sought will produce the evidence required." (internal citations and quotation marks omitted)).

Finally, Defendants have not demonstrated that the information they seek is in fact discoverable. *See Convertino*, 684 F.3d at 100. The Jasinski Declaration does not specify the discovery Defendants claim they need from Plaintiffs. The Declaration does not, for instance, identify the types of documents that Defendants would seek from Plaintiffs; nor does it identify any persons whom Defendants would attempt to depose. Defendants do say that they need the "data and/or documents used to create" Plaintiffs' summary spreadsheet. Jasinski Decl. ¶ 10. But it is not at all clear from the Jasinski Declaration why Defendants do not already possess the records needed "to determine what, if any, amounts are actually owed to Plaintiffs." *See generally* Jasinski Decl. Defendants admit that they currently possess information regarding the monthly amounts due to the Pension Fund and the actual amounts paid. Jasinski Decl. ¶ 8 (conceding that

the "remittance reports and payment information" are in Defendants' possession). Moreover, the percentages used to calculate interest and liquidated damages, as reflected in the spreadsheet, are set forth in the relevant agreements, which are part of the record. The Jasinski Declaration asserts that "[t]he remittance reports and payment information, which are in Castle Hill's possession, are not enough to allow Castle Hill to reconcile Plaintiffs' allegations against its own records so that it may appropriately defend this case." Jasinski Decl. ¶ 8. But nowhere does the Declaration specify the types of documents Defendants need *from Plaintiffs* to "appropriately defend this case." Thus, having failed to explain what discovery they seek to obtain from Plaintiffs that is not duplicative of records already in their possession, Defendants have failed to satisfy the third *Convertino* factor.[5]

## IV. CONCLUSION AND ORDER

For the foregoing reasons, Plaintiffs' motion for summary judgment is granted. The court orders as follows:

1. On or before January 5, 2016, Defendants shall disclose to Plaintiffs the following: (a) a remittance report for Site 2815 (C.N.A.'s) for August 2013; (b) remittance reports for Site 2354 (Dietary/Hskpg) for August 2012 and August 2013; and (c) remittance reports for Site 2825 (Sunshine Recreation) for March 2010 to April 2012, June 2012 through August 2013, October 2013 through March 2014, and May 2014 through July 2014.

---

[5] In a footnote in their opposition brief, Defendants assert that a settlement agreement between Castle Hill and the 1199 Healthcare Workers East entered into on September 20, 2010 [hereinafter "Settlement Agreement"] precludes Plaintiffs from recouping unpaid contributions, interest, and penalties for January, February, and March 2010. Defs.' Opp'n at 2 n.1. But the Settlement Agreement is irrelevant to this case, because Plaintiffs seek to recover only delinquent payments outside the settlement period, except for perhaps March 2010. *See* Anderson Decl. ¶ 26 (explaining that the delinquent payments Plaintiffs seek came due outside the time covered by the settlement agreement). To the extent that there remains a question as to whether the Settlement Agreement covers unpaid contribution payments for March 2010, the court will consider that question if Defendants object to Plaintiffs' final damages computation on that narrow ground.

2. The court will defer entering a final damages award. Within thirty days after receipt of the above remittance reports, Plaintiffs shall submit a supplement to its Motion for Summary Judgment that sets forth the final award sought, including all known contributions, liquidated damages, interest, and surcharges owed to Plaintiffs.

3. The court will defer ruling on the issue of attorney's fees and costs until entry of final judgment, whereupon the court will order the parties to attempt to reach an agreement on fee issues under Local Rule Civil Rule 54.2.

4. The court retains jurisdiction over this matter to ensure compliance with its Order, to issue a final judgment, and to address any other matters that arise from further proceedings.

Dated: December 4, 2015

Amit P. Mehta
United States District Judge